# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
GENE BOSTWICK, JR.,         *
                                 *    No. 19-1845V
          Petitioner,    *    Special Master Christian J. Moran
                                 *
v.                               *
                                 *    Filed: June 27, 2022
SECRETARY OF HEALTH        *
AND HUMAN SERVICES,       *    Onset of shoulder pain
                                 *
          Respondent.     *
* * * * * * * * * * * * * * * * * * * *

<u>Edward M. Kraus</u>, Kraus Law Group, LLC, Chicago, IL, for petitioner;
<u>Catherine E. Stolar</u>, United States Dep't of Justice, Washington, DC for respondent.

## Unpublished Findings of Fact[1]

       Gene Bostwick alleges that an influenza vaccination, given to him on October 3, 2017, caused him to suffer a shoulder injury related to vaccine administration ("SIRVA"). Petition, filed December 5, 2019. One element of a Table SIRVA claim is that a vaccinee must developed shoulder pain within 48 hours of the vaccination. 42 C.F.R. § 100.3(c)(10). Mr. Bostwick presents written and oral testimony on this point. The Secretary, however, disputes this evidence. Resp't's Report, filed May 24, 2021. To the Secretary, the more persuasive evidence is found in medical records created in October and November 2017. Those records indicate Mr. Bostwick first had upper thoracic pain on October 19,

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this ruling on its website. This posting will make the ruling available to anyone with the internet. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

2017 and complained about shoulder pain when he had his flu shot on November 6, 2017, 34 days after the vaccination. Id. at 19-20.

Taken as a whole, the evidence preponderates in favor of finding Mr. Bostwick's shoulder blade was painful starting on October 19, 2017. Mr. Bostwick also developed shoulder pain in his deltoid region on October 27, 2017.

## Procedural History

Mr. Bostwick filed his petition on December 5, 2019. It was assigned to the Special Processing Unit. Mr. Bostwick filed medical records and other evidence periodically. For example, on December 17, 2019, Mr. Bostwick filed an affidavit from his former supervisor, Kathy Wilson. Exhibit 9. The case was reassigned out of the Special Processing Unit on August 19, 2020, and Mr. Bostwick continued to submit more documents.

The Secretary reviewed this evidence and found that it was not sufficient to show that Mr. Bostwick was entitled to compensation. See Resp't's Rep't. Specifically, the Secretary contested whether Mr. Bostwick developed shoulder pain within 48 hours of his vaccination.

Due to a tension between the medical records and affidavits, the parties began to plan for a hearing. The undersigned indicated that testimony from the chiropractor who initially treated Mr. Bostwick, Dr. Paunicka, would be useful. Order, issued June 7, 2021. To present his position regarding the accuracy (or inaccuracy) of the medical records, Mr. Bostwick filed an affidavit on August 23, 2021. Exhibit 23. During a status conference, the parties discussed how to obtain more information from Dr. Paunicka. Eventually, the parties determined that Dr. Paunicka's testimony at a hearing would be an efficient way of proceeding. See order issued Sep. 8, 2021.

The hearing was held on December 14, 2021. Three witnesses, Dr. Paunicka, Ms. Wilson, and Mr. Bostwick, testified by videoconference. The testimony of Dr. Paunicka clarified how he creates his medical records.

## Standards for Adjudication

A petitioner is required to establish his case by a preponderance of the evidence. 42 U.S.C. § 300aa–13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of Health & Hum.

2

Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted). Proof of medical certainty is not required. Bunting v. Sec'y of Health & Hum. Servs., 931 F.2d 867, 873 (Fed. Cir. 1991).

In determining how evidence preponderates, special masters should consider the record as whole. 42 U.S.C. § 300aa–13(a). Medical records that describe the person's condition around the time that the medical records were created are presumptively accurate. See Cucuras v. Sec'y of Health & Hum. Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993). However, a medical record may not contain all information about a person's health. See Kirby v. Sec'y of Health & Hum. Servs., 997 F.3d 1378, 1382-83 (Fed. Cir. 2021). For a more detailed review of appellate opinions regarding weighing of evidence, see Britt v. Sec'y of Health & Hum. Servs., No. 17-1352V, 2021 WL 4282596 (Fed. Cl. Spec. Mstr. Aug. 27, 2021).

## Analysis

Reduced to simple terms, the chief issue concerns how to weigh evidence. Some evidence was created within approximately three weeks of the critical events. Other documents were created after a slightly longer delay. Finally, some testimonial evidence was created years later.

Dr. Paunicka's testimony enhanced the value of the medical records from his office. He explained why he creates notes: to track the patient's symptoms and the treatment that he provided. Tr. 42. Dr. Paunicka agreed with a commonsense proposition that medical records should be as complete and accurate as possible. Thus, he tries to record when a patient's pain began as accurately as possible. Tr. 14, 25. In accord with this practice, Dr. Paunicka testified he always asks his patients "what did you do to flare up the area[?]" Tr. 12. This background evidence helps to explain the persuasive value of Dr. Paunicka's medical records. See Britt, 2021 WL 4282596, at *1-4 (discussing the creation and evaluation of medical records).

Starting years before the 2017 flu vaccination, Dr. Paunicka treated Mr. Bostwick periodically. Tr. 12. Over the years, Mr. Bostwick experienced various musculoskeletal problems. Id.

Dr. Paunicka attributed those distant problems to Mr. Bostwick's employment. For roughly 25 years, Mr. Bostwick worked at Rogers Supply Co. as a warehouseman. Tr. 54, 89. He received equipment and unloaded it. Sometimes, Mr. Bostwick operated a forklift. He also lifted boxes every day. Tr. 73, 92. These boxes routinely weighed more than 50 pounds and sometimes more than 100

pounds.  Exhibit 22 at 100 (application for disability benefits through Social Security Administration); accord Tr. 77, 102.  Mr. Bostwick took pride in working hard and hated missing work.  Tr. 46, 148 (noting he worked with a broken heel).

The day of the vaccination, Mr. Bostwick got out of work early.  Tr. 96.  The ADP timekeeping system Rogers Supply Co. used reported when employees came in and out.  Tr. 80.  Mr. Bostwick received the flu vaccination on October 3, 2017.

Dr. Paunicka created the first medical record for Mr. Bostwick after his vaccination.  Around this time, Dr. Paunicka saw three or four people each year who told him they were experiencing pain after a shot.  Tr. 39.  However, as a chiropractor, Dr. Paunicka rarely saw people with shoulder problems.  Tr. 40.  Dr. Paunicka's practice mostly focused on problems in a person's spine and back.  Tr. 8, 40-41.

When Dr. Paunicka saw Mr. Bostwick on October 25, 2017, Dr. Paunicka anticipated that Mr. Bostwick was having pain in his upper back because Mr. Bostwick had sought treatment for this problem years earlier.  Tr. 12.  According to the medical record, Mr. Bostwick complained about "upper thoracic spine pain" which was "radiating to the left scapular area."  Exhibit 7 at 3.  Under the history section, Dr. Paunicka recorded that Mr. Bostwick was unsure what caused the problem to start.  Id.

Dr. Paunicka testified that he asked Mr. Bostwick when the problem began and Mr. Bostwick said "last Thursday."  Tr. 12; accord exhibit 7 at 3.  Dr. Paunicka explained that a patient typically would not use medical terms like "thoracic" or "scapular."  Tr. 13.  If a patient complained about shoulder pain, Dr. Paunicka might document a complaint about a ligament in the rotator cuff.  Tr. 29.  But, this type of complaint is not memorialized in Dr. Paunicka's October 25, 2017 record.  Similarly, Dr. Paunicka stated that if a patient were complaining about not being able to lift his arm, Dr. Paunicka would document that complaint.  Tr. 29-30.  Again, Dr. Paunicka's record does not memorialized this type of problem.  See exhibit 7 at 3.

During the October 25, 2017 appointment, Dr. Paunicka examined Mr. Bostwick's thoracic spine.  Dr. Paunicka found muscle spasms on the left side.  Exhibit 7 at 3; Tr. 28.  Dr. Paunicka also found subluxation at T4.  Id.  "Subluxation" means a "mechanical impediment to nerve function."  Dorland's Illustrated Medical Dictionary 1761 (33rd ed. 2020).  Importantly, Dr. Paunicka did not perform a supraspinatus test.  Tr. 28, 42.  A supraspinatus test evaluates whether a person can rotate a shoulder.  Tr. 41.  Dr. Paunicka adjusted Mr.

4

Bostwick's thoracic spine, and this adjustment helped with the back problem but not the shoulder problem according to Mr. Bostwick's testimony. Tr. 101.

Thus, on its face, Dr. Paunicka's medical record from October 25, 2017 appears to merit the presumption of correctness established by Cucuras. When the medical record says Mr. Bostwick's thoracic pain began "last Thursday," exhibit 7 at 3, a logical finding is that Mr. Bostwick's thoracic pain did, in fact, start the previous Thursday. Likewise, the lack of notation about a shoulder problem tends to imply that Mr. Bostwick was not having shoulder pain.

However, the Cucuras presumption is rebuttable, and Mr. Bostwick attempts to rebut the accuracy of this record. For example, Mr. Bostwick maintained the day after his vaccination, he woke up and could not lift his arm. Tr. 97. He further maintained that at work the day after the vaccination, he told his supervisor, Ms. Wilson, about his problem and Ms. Wilson concurred with this testimony. Tr. 59, 67-68, 153. At one point, Ms. Wilson testified that she told him he should avoid lifting heavy objects and he was on light duty. Tr. 59-60; see also Tr. 155 (Mr. Bostwick's testimony). Ms. Wilson also testified that a paper from a chiropractor said Mr. Bostwick needed light duty. Tr. 61.[2]

Mr. Bostwick's account is not credible. According to him, within two to three days of the vaccination, his pain level rated approximately 8/10. Tr. 155. The pain was intense enough that he required modifications at work and eventually ceased employment. Tr. 63 (Ms. Wilson). Mr. Bostwick's response, according to him, was that he called his chiropractor, Dr. Paunicka, for an appointment the day after vaccination and was told the next available appointment was not for approximately three weeks. Tr. 98, 154-55. This account appears unlikely. Moreover, Mr. Bostwick appears not to have attempted to schedule an appointment with his primary care physician at the Christie Clinic, Dr. Daniel Deem. Finally, Mr. Bostwick did not present any persuasive reason for discounting Dr. Paunicka's initial record that says the start of the thoracic pain was "last Thursday." See Tr. 101, 127-28. Mr. Bostwick views Dr. Paunicka as a good listener, Tr. 152, and Dr. Paunicka seems conscientious about creating medical records that are accurate.

The remaining documentary and testimony evidence mostly, but not entirely, reinforces the finding that Mr. Bostwick did not have shoulder pain within 48

---

[2] Records from Rogers Supply Co. did not include a chiropractor's note saying light-duty was needed. See exhibit 17. Ms. Wilson stated Rogers did not formally document a referral for light-duty. Tr. 60, 82.

hours of his vaccination. On October 27, 2017, in the next visit to Dr. Paunicka, Mr. Bostwick told his chiropractor that he had been "lifting 50 pound coils all day yesterday." Exhibit 7 at 6; accord Tr. 45 (Dr. Paunicka). At first Mr. Bostwick acknowledged the accuracy of this statement (Tr. 102), but later said he did not recall making it. Tr. 133. Pursuant to Cucuras, the statement that Mr. Bostwick was lifting 50 pounds coils is accepted as accurate.[3]

The medical records from Mr. Bostwick's third visit with Dr. Paunicka says, "Not as much pain down the left arm." Exhibit 7 at 10 (October 28, 2017). Similarly in the fourth record, Dr. Paunicka recorded Mr. Bostwick as communicating "numbness into the left shoulder and arm is less." Id. at 11 (October 30, 2017). Neither medical record documents any exam of the left shoulder. Tr. 31. From the medical records' use of comparisons ("not as much pain" and "less"), Mr. Bostwick has argued that he must have had some pain before these notations.

Mr. Bostwick's argument carries some logical force. But, even if Mr. Bostwick were correct that his shoulder pain began before October 28, 2017, the inference does not mean that the onset date was all the way back to October 4, 2017. Such a jump would be too far given that the October 24, 2017 record indicates Mr. Bostwick's (thoracic and scapular) pain started on Thursday, October 18, 2017. Dr. Paunicka stated that Mr. Bostwick's arm pain began shortly after treatment. Tr. 47. In his opinion, a problem in the lower cervical spine can lead to numbness in a person's arm. Tr. 31.

Mr. Bostwick had three more visits with Dr. Paunicka, which were on October 31, 2017, November 1, 2017, and November 2, 2017. Exhibit 7 at 12-14. By the November 2, 2017 visit, Dr. Paunicka was indicating that Mr. Bostwick's problem in his spine had resolved but the scapular pain was continuing. Exhibit 7 at 14; accord Tr. 18, 104. Dr. Paunicka wondered about the possibility of another problem. Tr. 17.

On Friday, November 3, 2017, Mr. Bostwick returned to the office of Dr. Paunicka, but on this date, saw Dr. Paunicka's colleague and daughter, Dr. Elizabeth Paunicka. Exhibit 7 at 15; see also Tr. 35. This medical record shows Mr. Bostwick was "doing a lot of heavy lifting" at work and Mr. Bostwick was

---

[3] In Mr. Bostwick's account, although Ms. Wilson had placed him on light duty, he was often not following the restrictions because pulling co-workers from their duties was difficult. Tr. 103. Mr. Bostwick, however, did not present any testimony from coworkers from the warehouse who observed his ability or inability to work in October or November 2017.

having difficulty lifting his left arm.  Exhibit 7 at 15; see also Tr. 36, 105, 132.  Dr. Elizabeth Paunicka conducted a supraspinatus test on Mr. Bostwick's shoulder, which is the first objective evaluation.  Tr. 35-36.  The supraspinatus test was positive and Dr. Paunicka determined that Mr. Bostwick had reduced range of motion for abduction and flexion in his left shoulder.  She commented Mr. Bostwick "does show signs and symptoms of possible impingement syndrome at the left shoulder."  Exhibit 7 at 15.  She recommended avoiding overhead activity, applying ice to the shoulder, and returning for a follow up visit on Monday.

On Monday, November 6, 2017, Mr. Bostwick again saw Dr. Mark Paunicka.  Mr. Bostwick stated that he was "feeling good in my lower neck and upper back . . . . However, I am still having the pain to the left shoulder where I did have the flu shot."  Exhibit 7 at 16.  Dr. Paunicka found that Mr. Bostwick's "cervical and upper thoracic spine do appear to be structurally stable."  Id.  Thus, Dr. Paunicka discharged Mr. Bostwick from more chiropractic care.  With respect to the pain "now related to the left shoulder[,] [Dr. Paunicka] told him to contact his medical doctor and make an appointment to have the left shoulder evaluated."  Id.

Mr. Bostwick saw his primary care doctor, Dr. Deem, on November 8, 2017.  Exhibit 3 at 164.  Mr. Bostwick stated that he cannot abduct his shoulder.  Id.; see also Tr. 19, 129.  Mr. Bostwick also associated the onset of his pain with his flu shot, which, according to this medical record, was 3.5 weeks earlier.  Dr. Deem recommended an MRI.  Exhibit 3 at 166.  The MRI revealed moderate arthritis in Mr. Bostwick's left acromioclavicular joint as well as a full-thickness tear of the supraspinatus tendon.  Id. at 172 (Nov. 21, 2017).

Mr. Bostwick saw an orthopedist, Matthew Phillips, on November 28, 2017, and in this appointment, Mr. Bostwick stated he was having shoulder pain for 1.5 months.  Exhibit 3 at 157; see also Tr. 110.  The history of present illness section shows that Mr. Bostwick attributed his pain to an injury at work, although the nature of the injury is not described.  Exhibit 3 at 157.  In his testimony, Mr. Bostwick explained he did not know what caused his injury and certainly was not aware a vaccination could harm a person's shoulder.  Tr. 130.

While the histories obtained by Dr. Deem and Dr. Phillips merit consideration, they do not persuasively show Mr. Bostwick's shoulder pain started within two days of vaccination.  Admittedly, the history in Dr. Deem's record links Mr. Bostwick's pain to his flu shot.  Exhibit 3 at 164.  But, the problem is that the flu shot occurred 36 days earlier, not 3.5 weeks earlier as presented in the history given to Dr. Deem.  Similarly, Dr. Phillips's record suggests an onset around

7

October 14, 2017, 1.5 months before the November 28, 2017 appointment. In addition, the histories point to two different events as starting the problem – the flu shot (Dr. Deem) and a work-related incident (Dr. Phillips). These inconsistencies tend to reduce the weight given to these records.

In sum, a preponderance of the evidence establishes that Mr. Bostwick did not experience shoulder pain within 48 hours of vaccination. Instead, the evidence preponderates in favor of finding the shoulder (deltoid) pain began on October 27, 2017. Mr. Bostwick also had scapular pain beginning on October 19, 2017.

October 27, 2017 is 24 days after Mr. Bostwick's flu vaccination. Mr. Bostwick may or may not wish to pursue a report from an expert to satisfy the causation-in-fact standards. Any expert should explain how the flu vaccine can cause scapular shoulder pain without causing pain in the recipient's bicep or triceps. See Tr. 44

## Conclusion

Mr. Bostwick began having shoulder (deltoid) pain on October 27, 2017. Mr. Bostwick shall file a status report, proposing a next step in 30 days.

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master